714

530 S.E.2d 913

Susie Virginia GALLAGHER

v.

Patrick Stephen GALLAGHER.

Record No. 2443–99–4.

Court of Appeals of Virginia,
Alexandria.

July 11, 2000.

Teresa S. Cole (Marcia M. Maddox; Law Office of Marcia M. Maddox, Vienna, on briefs), for appellant.

Sharon K. Lieblich (Carolyn M. Grimes; Sharon K. Lieblich, P.C., on brief), Alexandria, for appellee.

Present: ELDER, ANNUNZIATA and FRANK, JJ.

ANNUNZIATA, Judge.

Susie Virginia Gallagher ("mother") and Patrick Stephen Gallagher ("father") were divorced by final decree on June 30, 1992. The decree affirmed, ratified and incorporated the parties' child custody, support and property settlement agreement ("agreement"), which, *inter alia,* required the father to pay child support for the parties' two minor children. A mediated agreement amending the decree was executed by the parties in 1995, but, prior to these proceedings, was never filed in or approved by the Fairfax County Circuit Court, nor was the amended agreement incorporated into any order of that court. The issues on appeal arise from a dispute regarding the effect of the amended agreement. Mother contends the trial court erred by 1) applying the exception established in *Acree v. Acree,* 2 Va.App. 151, 342 S.E.2d 68 (1986), to the father's court-ordered child support obligation; 2) retroactively modifying the father's child support obligation and denying the mother's request for child support arrearages; 3) incorporating the 1995 amendment into the parties' decree on September 17, 1999; 4) admitting certain documents into evidence; and 5) denying the mother's petition for attorney's fees. For the reasons that follow, we affirm.

## BACKGROUND

Under the original agreement, the father was obligated to pay child support in the amount of $1,723 per month, beginning the first day of the month after the mother moved from the marital residence. His child support obligation was based on a gross annual income of $150,000 and was calculated using the statutory guidelines for child support set forth in Code § 20–108.2. The mother was unemployed at the time and had no income. The original agreement also provided for an amount of child support in excess of the guideline amount, beginning with the execution of the original agreement and ending October 1, 1993. The parties agreed to this adjustment in consideration of the ages of the children and the parties' desire that the mother remain the children's primary caretaker. Furthermore, the original agreement provided that the parties were to share physical custody of the children when the mother moved from the marital residence, initially on a 60/40 basis and, after the passage of two years, on a 50/50 basis. The mother was required to establish a primary residence for the children upon her move from the marital residence. The father agreed to provide the first $250,000 of the purchase price of the home in the form of a combined down payment and first mortgage payment.

In March, 1995, the parties re-negotiated child support, executing a mediated agreement amending the original agreement. The amendment provided that the father would have custody of the children for an additional 10% of the time and that support was to be reduced to $1,100 per month for the period September 1, 1994 through December 31, 1997, a reduction of $623. The parties agreed that the new child support obligation was set "in accordance with the factors and formula set forth by the Virginia State Code regarding the calculation of shared custody payments." The amendment provided that "[t]he amount of child support shall remain fixed from 1994 until 1997 so long as the equal sharing of parenting time continues." The modification was made, notwithstanding the provision in the original agreement and reflected in the final decree regarding annual adjustments of child support to

be made until the children attained the ages of eighteen years and nine months. However, the amendment contemplated modification of support under certain other circumstances, including the disability, unemployment, or reduction in income of either party. The 1995 amendment further provided that "[n]othing in this amendment shall bar either former spouse from seeking additional child support adjustment or relief from a court of law. However, the purpose of this amendment is to avoid the necessity of doing so." The 1995 amendment was executed by the parties but was not filed, approved or incorporated into any order of the court.

On March 30, 1999, the trial court entered a rule to show cause against the father for child support arrearages totaling $33,548.91; the claimed arrearages reflected the difference between the amount of child support paid following the 1995 amendment and the child support established under the final decree of divorce. At that time, the father filed a motion to incorporate amendment of property settlement agreement, seeking incorporation of the 1995 amendment into the final decree of divorce. The trial court issued a letter opinion on August 18, 1999, stating that the father was to be accorded credit for non-conforming child support payments. The mother's petition for arrearages was denied. The court further granted the father's motion to incorporate the 1995 amendment into the final decree of divorce and denied attorney's fees to both parties.

## NON–CONFORMING CHILD SUPPORT PAYMENTS

In reaching its decision in this case, the trial court applied the five-part test established in *Acree:*

[F]ive requirements must be met in order to allow such a credit [against child support otherwise due]: 1) the parties have entered into an unequivocal agreement; 2) the change of custody is permanent; 3) the agreement has been fully performed; 4) enforcing the original child obligations contained in the final decree would unjustly enrich one party;

5) enforcing the agreement would not adversely affect the child support award.

■ The mother's claim of error rests on her contention that the *Acree* exception applies only in instances when the parties have agreed to a total transfer of custody from one party to the other. Her argument is supported neither by *Acree* nor our other decisions addressing this issue. In *Acree,* we recognized that where the purpose of a child support award has been achieved, albeit in ways that deviate from the express order of the court for support, the obligor may be credited with support as though in compliance with the court order. Nothing in *Acree* limits the reach of this principle to those cases in which full custody has been transferred to the obligor; its focus is on the purpose to be achieved by the original support award, viz. the provision of support meeting the proved needs of the child who is the beneficiary of the award.

Our decision in *Acree* relied in part on *Isler v. Isler,* 425 N.E.2d 667 (Ind.Ct.App.1981), an Indiana decision in which the court stated:

> We are of the opinion that a narrow exception to the rule may exist in a case where the obligated party, by agreement with the custodial parent, has taken the child or children into his or her home, has assumed custody of them, has provided them with food, clothing, shelter, medical attention, and school supplies, and has exercised parental control over their activities and education for such an extended period of time that a permanent change of custody is demonstrated. In such a case, the court may, in its sound discretion, allow credit against the accrued support for the reason that the obligated parent has merely furnished support in a different manner under different circumstances easily susceptible of proof.

*Id.* at 670 (quoted in *Acree,* 2 Va.App. at 157, 342 S.E.2d at 71).

While full custodial transfer, permanent in nature, may facilitate an obligor's ability to prove the purpose of the

original award has been met, nothing in the *Acree* analysis supports the view that other permanent custodial arrangements, including shared custodial arrangements, preclude a finding that the child support award contemplated by the court is fully met, where "the obligated parent has ... furnished support in a different manner under different circumstances easily susceptible of proof." *Id.; see also Henderlite v. Henderlite,* 3 Va.App. 539, 542, 351 S.E.2d 913, 914 (1987) (where both parties unequivocally agree to modify support and the support obligation under the decree is fulfilled, credit for non-conforming payments will be permitted).

■ Accordingly, applying the *Acree* test to the facts of this case, we find the evidence supports the decision of the trial court. The trial court found as a matter of fact that the effect of the 1995 amendment amending the original agreement was to expand the father's custody from 40% of the time to 50% of the time and that this increase was permanent. The trial court also found as a matter of fact that enforcement of the 1995 amendment would not adversely affect the child support award as reflected in the final decree of divorce, noting that the mother offered no evidence to show the reduction in the support payment was causally connected to her decision to sell her house, which the mother claimed to be the primary adverse result. The trial court found additionally that the parties' amendment was unequivocal, that the father fully performed the amended agreement, and that, because he assumed a permanent increase in custody and had incurred increased expenses on behalf of the children as a result, enforcement of the provisions of the final decree would unjustly enrich the mother, whose liabilities it found had decreased.

We will not disturb the findings of the trial court where credible evidence supports them. *See Pommerenke v. Pommerenke,* 7 Va.App. 241, 244, 372 S.E.2d 630, 631 (1988). The record establishes that the "agreement of the parties as carried out worked to the benefit of the [children] to the same degree that absolute conformity with the terms of the decree would have." *Acree,* 2 Va.App. at 158, 342 S.E.2d at 72. We,

therefore, affirm the trial court's decision to credit the father's non-conforming child support payments.

## RETROACTIVE COURT RATIFICATION OF MODIFIED CHILD SUPPORT

■ The mother contends that the trial court erred by enforcing the provisions of the 1995 amendment, because it was not incorporated into the final decree when the parties entered into the amended agreement and because the amended agreement had expired when the trial court incorporated it. We agree that any modification of child support payments established by agreement of the parties must be reviewed and approved by the court. *See Kelley v. Kelley*, 248 Va. 295, 298, 449 S.E.2d 55, 56 (1994) ("Parents may not contract away their children's rights to support, nor may a court be precluded by agreement from exercising its power to decree child support."); *Wilderman v. Wilderman*, 25 Va.App. 500, 506, 489 S.E.2d 701, 704–05 (1997) ("When changed circumstances dictate a modification of a support decree, the appropriate remedy is for the party to petition the court to modify the decree. The party or parties may not unilaterally or bilaterally vary its terms." (quoting *Commonwealth v. Skeens*, 18 Va.App. 154, 158, 442 S.E.2d 432, 434–35 (1994))); *Scott v. Scott*, 12 Va.App. 1245, 1247, 408 S.E.2d 579, 581 (1991) ("Divorcing parents cannot by agreement divest a divorce court of its jurisdiction to award child support.").

■ However, nothing in our previous holdings suggests that court approval may not be granted retroactively after an agreement has been performed, provided the modification does not adversely affect the child's interest. It follows that the evidence in cases in which such *ex post facto* court approval is sought must fully support the modification when viewed in light of the dictates of *Acree*, i.e., the record must affirmatively show that the best interests of the child are served and the agreed modification "substantially satisfies the purpose and function of the support award and ... does not vary [in effect] the support award." *Wilderman*, 25 Va.App.

at 506, 489 S.E.2d at 704–05. Where the party seeking ratification of an agreement to modify child support fails to meet this burden of proof, the child support modification will be deemed invalid and arrearages may be awarded. *See Henderlite*, 3 Va.App. at 542, 351 S.E.2d at 914.

In sum, parties who enter into agreements for support and implement them without seeking and obtaining court approval, do so at their peril and may later be held liable for non-conforming payments, when measured against the court's ultimate determination of appropriate support levels, viewed in light of the best interests of the child standard. *See Watkinson v. Henley*, 13 Va.App. 151, 158–59, 409 S.E.2d 470, 474 (1991); *Alexander v. Alexander*, 12 Va.App. 691, 695, 406 S.E.2d 666, 668 (1991). However, as we made abundantly clear in *Goodpasture v. Goodpasture*, 7 Va.App. 55, 58, 371 S.E.2d 845, 847 (1988), any such modification by agreement implemented prior to court approval will be subject to scrutiny by the court, and, in the absence of evidence proving the modification of support amount or mode of payment served the best interests of the child, will be disallowed. *See also Kelley*, 248 Va. at 298, 449 S.E.2d at 56 (a court cannot be precluded by agreement between the parties from exercising its power to decree child support).

The mother's claim that the trial court should not have incorporated the 1995 amendment into the parties' final decree is, therefore, without merit, because the evidence supports the trial court's findings that the amendment created a permanent alteration in the custody arrangements, not one of limited duration, and that under the amended agreement, the purpose and function of the support award, including the total amount of support the children were entitled to receive under the decree, were substantially satisfied. The trial court thus properly incorporated the 1995 amendment effective as of the date of the parties' agreement.

The mother also contends that, under established Virginia law, *ex post facto* approval of the parties' agreement constituted an improper retroactive modification of support. *See, e.g.,*

*Cofer v. Cofer*, 205 Va. 834, 839, 140 S.E.2d 663, 666 (1965); *Bennett v. Bennett*, 22 Va.App. 684, 696, 472 S.E.2d 668, 674 (1996). We conclude that the various authorities cited by the mother are not controlling, because they do not address the effect of an unequivocal agreement between the parties which, in effect, does not vary the total amount of support awarded to the children by decree but only the "method of payment," such as may occur concurrently with a permanent change of custody. *Acree, Skeens, Henderlite,* and *Wilderman* all stand for the proposition that non-conforming child support payments will be approved by the court *retroactively* where the purpose and function of the child support award have been substantially satisfied. Based on the evidence in this case, and the principles that apply, we find that the trial court did not improperly modify retroactively the child support decree.

## ADMISSION OF EXHIBIT COMPARING FATHER'S EXPENDITURES AFTER CHANGE OF CUSTODY

The mother argues that the father's exhibit comparing his 1994 household expenditures with the same expenditures in 1999, after the increase in his physical custody of the children, should not have been admitted because it was irrelevant to any issue in the case. Her argument is without merit.

The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion. *See A.H. v. Rockingham Pub. Co., Inc.,* 255 Va. 216, 224, 495 S.E.2d 482, 487 (1998). As a general principle, evidence that tends to prove a matter which is properly at issue in a case is admissible. *See Horne v. Milgrim,* 226 Va. 133, 139, 306 S.E.2d 893, 896 (1983) ("Any fact, however remote, that tends to establish the probability or improbability of a fact in issue is admissible."). Such evidence "should be excluded only when its probative value is outweighed by policy considerations which make its use undesirable in the particular case." *Farley v. Commonwealth,* 20 Va.App. 495, 498, 458 S.E.2d 310, 311 (1995). Responsibility for evaluating whether the probative value of evidence is

outweighed by policy considerations mitigating against admissibility rests within the discretion of the trial court. *See id.* at 498, 458 S.E.2d at 311–12.

The trial court noted that the evidence in question was "compelling" that the father's expenditures on his children substantially exceeded the amount by which his payment to the mother was reduced under the 1995 amendment. Thus, it tended to prove that the amended agreement did not adversely affect the children. It also tended to prove the *Acree* requirement that the obligor spouse fully perform the agreement in question. *See* 2 Va.App. at 155, 342 S.E.2d at 70. Consequently, this evidence was relevant to the case, and the mother cites no ground other than relevance upon which to object. The trial court, therefore, properly admitted the evidence.

## WHETHER TRIAL COURT ERRED IN DENYING THE MOTHER'S PETITION FOR ATTORNEY'S FEES

The mother contends the trial court abused its discretion by refusing her petition for attorney's fees. Her contention lacks merit.

The awarding of attorney's fees lies within the sound discretion of the trial court. *See Graves v. Graves*, 4 Va.App. 326, 333, 357 S.E.2d 554, 558 (1987). The mother cites a number of cases supporting an award of attorney's fees where the opposite party was found in contempt of a support award or where that party exhibited bad faith. However, none of the cases she cites approved an award of attorney's fees where the opposite party prevailed at trial and was found to have acted in good faith. Consequently, the cases cited are inapposite.

Moreover, although the mother contends that the father breached paragraph 28 of the parties' original agreement which was incorporated into their final decree of divorce, her claim is without merit. That paragraph reads:

If either party shall breach the terms of this Agreement *and that party is found to be at fault by a court of*

*competent jurisdiction,* then the party at fault shall pay the legal costs incurred by both parties caused by the breach. (Emphasis added). Although the mother claims the father breached the agreement by failing to pay the full amount of child support dictated by its provisions, she fails to note that such a breach must be found by a court of competent jurisdiction. The trial court here found in favor of the father, ruling that he had not breached the agreement. Consequently, paragraph 28 of the agreement is inapplicable.

For the reasons stated in this opinion, we affirm the decision of the trial court.

*Affirmed.*

ELDER, Judge, dissenting.

I would hold that the trial court abused its discretion in holding that father was entitled to credit for non-conforming child support payments. Therefore, I would reverse the decision of the trial court on all issues, and I respectfully dissent from the majority's four-part analysis.

Under settled principles,

[c]hild support payments required under a valid court order become vested as they accrue, and the court is without authority to make any change as to past due installments. Generally, the terms of a support decree must be strictly complied with and payments made when due to the designated payee in accordance with the terms of the decree. When changed circumstances dictate a modification of a support decree, the appropriate remedy is for the party to petition the court to modify the decree. The party or parties may not unilaterally or bilaterally vary its terms.

However, although a court may not retroactively modify a child support obligation, allowing a payor spouse credit for non-conforming support payments, *in the limited situations where permitted,* is not a modification of a support order. *See Acree v. Acree,* 2 Va.App. 151, 152, 342 S.E.2d 68, 69 (1986). A court may, when equitable and under limited circumstances, allow a party credit for non-conforming support payments, provided that the non-conforming support

payment substantially satisfies the purpose and function of the support award, *see* [*id.*], and to do so does not vary the support award.

*Commonwealth v. Skeens*, 18 Va.App. 154, 158, 442 S.E.2d 432, 434–35 (1994) (citations omitted) (emphasis added). "Typically, two conditions must exist before credits will be given for non-conforming payments: (1) an agreement by the parties which modifies the terms or method of payment; and (2) no adverse [e]ffect on the support award." *Wilderman v. Wilderman*, 25 Va.App. 500, 506, 489 S.E.2d 701, 705 (1997). "An agreement which itself establishes or modifies the support obligation, rather than only the terms or method of payment, does not meet this test. Such agreements are not enforceable absent court approval, because they impinge on the child's right to support and the court's continuing jurisdiction to decree it." *Id.* at 506 n. 1, 489 S.E.2d at 705 n. 1.

We approved one exception to this rule in *Acree*, which we recognized involved "unique facts." 2 Va.App. at 152, 342 S.E.2d at 68. *Acree* involved a bilateral modification agreement which provided for one of the parties' children, originally in the custody of her mother, to reside permanently with her father. *See id.* at 152–53, 342 S.E.2d at 69. In conjunction with this total change in custody, the parties agreed to a cessation of father's support payments to mother on behalf of that child. *See id.* at 153, 342 S.E.2d at 69. We held that where a

custodial parent has by his or her own volition entered into an agreement to relinquish custody on a permanent basis and has further agreed to the elimination of support payments and such agreement has been fully performed, ... the purpose to be served by application of an inflexible rule denying credit for non-conforming payments is outweighed by the equities involved.... By assuming [complete] physical custody and total responsibility for the support of the child, the husband fulfilled his obligation under the decree.

*Id.* at 157–58, 342 S.E.2d at 71–72 (emphasis omitted).

The majority contends that *Acree* "exception" is not limited to instances in which the parties have agreed to a total

transfer of custody. I disagree for two reasons. First, *Acree* in fact involved a total transfer of custody and concomitant cessation of child support payments. To the extent that *Acree* purports to apply to partial changes of custody, its holding is dicta.

Second, in quoting in *Acree* from the Indiana case of *Isler v. Isler*, we recognized only " 'a narrow exception' " to the rule prohibiting credit for non-conforming support payments—to be applied in cases involving the total "relinquish[ment of] custody on a permanent basis." *Acree*, 2 Va.App. at 157, 342 S.E.2d at 71 (quoting *Isler v. Isler*, 425 N.E.2d 667, 670 (Ind.Ct.App.1981)) (emphasis omitted from second quotation). To permit modification of a decree by the parties in a case in which the change in custody is less than complete will invite "continuous trouble and turmoil," the exact difficulties the rule prohibiting credit for non-conforming payments is designed to avoid. *Henderlite v. Henderlite*, 3 Va.App. 539, 542, 351 S.E.2d 913, 914 (1987).

As the majority recognizes, our holding in *Acree* was premised in part on the fact that when a *complete* change in custody occurs, the parent originally obligated to pay support for that child " 'has ... furnished support in a different manner under different circumstances *easily susceptible of proof.*' " *Acree*, 2 Va.App. at 157, 342 S.E.2d at 71 (quoting *Isler*, 425 N.E.2d at 670) (emphasis added). Where the change in custody is less than total, as occurred in this case, determining whether the agreed-upon reduction in support payments properly corresponds to the greater burden assumed as a result of the increased custodial time is not so "easily susceptible of proof." Under these circumstances, the agreement does more than alter the terms or method of payment; I would hold, as a matter of law, that it impermissibly modifies the underlying obligation such that a court need not reach the issue of whether it has an adverse effect on the support award. Therefore, I adhere to the long-standing rule that, absent a complete change in custody, "the appropriate remedy" in a case in which the parties have agreed to a modification of support "is for the part[ies] [timely] to petition

the court to modify the decree." *Skeens,* 18 Va.App. at 158, 442 S.E.2d at 435.

In sum, I would limit *Acree* to its facts and hold that the trial court abused its discretion in concluding father was entitled to a credit for non-conforming child support payments under the facts of this case. In addition, under my analysis, father's exhibit of comparative household expenditures was not relevant to the case and was improperly admitted. Finally, because I would hold that wife should have prevailed in the trial court, I would hold she was entitled to payment of her attorney's fees pursuant to the parties' 1991 property settlement agreement. Therefore, I would reverse the decision of the trial court on these issues, and I respectfully dissent from the majority's four-part analysis.