UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Huff, Judges Beales and AtLee
Argued at Richmond, Virginia


LYNN MILLER, F/K/A
  LYNN MILLER GREEN

                                                         MEMORANDUM OPINION* BY
v.        Record No. 1993-14-3                           JUDGE RICHARD Y. ATLEE, JR.
                                                         JUNE 23, 2015

ROBERT LORENZA GREEN, JR.


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
F. Patrick Yeatts, Judge

(John H. Kitzmann; Kim M. Mattingly; Davidson & Kitzmann,
PLC, on briefs), for appellant.  Appellant submitting on briefs.

(Ronald R. Tweel; Elizabeth P. Coughter; Michie Hamlett Lowry
Rasmussen & Tweel, PLLC, on brief), for appellee.  Appellee
submitting on brief.


        Lynn Miller ("wife") appeals an order of the Circuit Court of the City of Lynchburg (the

"circuit court").  First, she assigns error to the circuit court's retroactive termination of the

support obligation of Robert Lorenza Green, Jr. ("husband").  Second, she assigns error to the

circuit court's finding that husband was permitted to cease payment of that support unilaterally,

without first seeking judicial approval.  In support of her first assignment of error, wife argues

that Code §§ 20-112 and 20-109(A) forbade retroactive modification.  Wife also argues that the

parties' "Property Settlement and Separation Agreement" ("PSA") prohibited the modification.

In support of her second assignment of error, wife argues that the circuit court's finding violated

our holding in Stroud v. Stroud, 54 Va. App. 231, 677 S.E.2d 629 (2009).  For the reasons stated

below, we reverse as to both assignments of error, and remand this matter to the circuit court.

------------------------------

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003). Viewed in such a light, the evidence is as follows.

In 2011, the circuit court granted husband and wife a divorce. The circuit court incorporated, but did not merge, the PSA into the final decree of divorce. Section One of the PSA required husband to pay monthly spousal support to wife through 2018, with payments due on the first day of each month. This section also required husband to pay additional quarterly support payments to wife, until she reached the age of 58, with those payments due on or before April 30th, July 31st, September 30th, and December 31st. The PSA outlined the three ways husband's support obligation could end prematurely: the death of either party, the remarriage of wife, or "[u]pon clear and convincing evidence that the spouse receiving support has been habitually cohabiting with another person in a relationship analogous to a marriage for one year or more . . ." ("the cohabitation provision").

On July 21, 2014, alleging a violation of the cohabitation provision, husband filed a "Motion to Reinstate" and asked the circuit court to "enforce the Final Decree of Decree [sic] and the Property Settlement and Separation Agreement of this Court." On the same day, husband filed a "Motion to Terminate Spousal Support." He served wife with both motions on July 29, 2014. The last month for which husband paid spousal support was June of 2014. Husband did not make the spousal support payment due on July 1, 2014, though at that time he had not yet filed any motions with the circuit court. In response to husband's request for admissions, wife admitted that she began cohabiting with another person on March 29, 2012.

In October of 2014, the circuit court entered a final order terminating spousal support retroactively to March 29, 2013, and declaring that no spousal support arrearage existed.[1] In announcing its ruling, the circuit court judge commented on husband's unilateral decision to cease payment of support beginning in July of 2014, saying: "I think the unilateral act of [husband] was permitted pursuant to the terms of the separation agreement and it comports with the parties' agreement."[2] Wife made timely and specific objections, preserving the errors she now raises.

## II. ANALYSIS

### A. STANDARD OF REVIEW

This appeal requires us to interpret statutes and a contract. The meaning of a statute "is a question of law we review *de novo*." Milot v. Milot, 64 Va. App. 132, 135, 765 S.E.2d 861, 862 (2014). Barring any ambiguity within a statute, we are bound by that statute's plain meaning. See Osman v. Osman, 285 Va. 384, 389, 737 S.E.2d 876, 878-79 (2013) (quoting Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007)). The PSA is a contract. See Pellegrin v. Pellegrin, 31 Va. App. 753, 759, 525 S.E.2d 611, 614 (2000) (noting that "a property settlement agreement is a contract between the parties"). As such, we apply a *de novo* standard of review to the circuit court's interpretation of the PSA. See Plunkett v. Plunkett, 271 Va. 162, 166, 624 S.E.2d 39, 41 (2006) ("On appeal, the Court reviews a trial court's interpretation of a contract de novo.").

---

[1] Wife argued in the circuit court that spousal support should terminate as of the date of the October hearing, which would have resulted in an arrearage of several months.

[2] The final order does not contain this statement, but we infer that the circuit court relied upon this finding when it ruled that no support arrearage existed. The circuit court's finding that no support arrearage existed is included in the final order.

B.  RETROACTIVE MODIFICATION

Wife first claims the circuit court erred by terminating husband's spousal support obligation retroactively to March 29, 2013.[3]  She argues that Code §§ 20-109(A) and 20-112 proscribed such retroactivity, as did the PSA.  Because we agree that the circuit court lacked the statutory authority to modify husband's obligation retroactively, we do not address wife's argument about the PSA.

1.  Code § 20-112

Section 20-112 of the Code reads as follows:

> When the proceedings are reopened to increase, decrease or terminate maintenance and support for a spouse or for a child, or to request additional orders to effectuate previous orders entered pursuant to § 20-107.3, the petitioning party shall give such notice to the other party by service of process or by order of publication as is required by law.  Except as provided by § 20-110, no support order may be retroactively modified, but may be modified with respect to any period during which there is a pending petition for modification in any court, but only from the date that notice of such petition has been given to the responding party.

We discussed this issue previously, in the context of child support payments, noting that "[c]hild support payments required under a valid court order become vested as they accrue, and the court is without authority to make any change as to past due installments."  Commonwealth v. Skeens, 18 Va. App. 154, 158, 442 S.E.2d 432, 434-35 (1994).  Although Skeens dealt with child support rather than spousal support, the reasoning still applies.  See Richardson v. Moore, 217 Va. 422, 424, 229 S.E.2d 864, 866 (1976) ("Appellees suggest no reason, and we perceive none, why the same rules do not apply to awards of support for a spouse or to unitary awards of support for a

---

[3] Husband concedes this assignment of error.  Notwithstanding his concession, this Court must resolve the issue independently.  See Joseph v. Commonwealth, 64 Va. App. 332, 336 n.2, 768 S.E.2d 256, 258 n.2 (2015) ("Concessions of legal error, however, do not relieve the appellate court of its responsibility to perform its judicial function.  While such concessions are entitled to great weight, they do not remove the Court's obligation to conduct its own review.").

spouse and dependent children."). Husband served wife with the "Motion to Terminate Spousal Support" on July 29, 2014. The clear language of Code § 20-112 forbade the circuit court from modifying husband's support obligation to a date any earlier than July 29, 2014, the date he served wife with the modification motion.

### 2. Code § 20-109(A)

Section 20-109(A) of the Code reads, in relevant part, as follows:

> Upon petition of either party the court may increase, decrease, or terminate the amount or duration of any spousal support and maintenance that may thereafter accrue, whether previously or hereafter awarded, as the circumstances may make proper. Upon order of the court based upon clear and convincing evidence that the spouse receiving support has been habitually cohabiting with another person in a relationship analogous to a marriage for one year or more commencing on or after July 1, 1997, the court shall terminate spousal support and maintenance unless (i) otherwise provided by stipulation or contract or (ii) the spouse receiving support proves by a preponderance of the evidence that termination of such support would be unconscionable.

The Supreme Court addressed this section of the Code in Reid v. Reid, 245 Va. 409, 429 S.E.2d 208 (1993),[4] noting: "Code § 20-109 provides that the divorce court may modify or terminate spousal support that 'may thereafter accrue,' but makes no provision for modifying an award for support previously accrued." Id. at 414, 429 S.E.2d at 211. This interpretation of the Code is consistent with a close reading of the statute, particularly the word "thereafter." In the context of the first sentence of Code § 20-109(A), the only logical event after which a modification could be ordered is "upon petition of either party." Section 20-109(A) of the Code therefore prohibited the circuit court from setting a date of spousal support termination any earlier than July 29, 2014.

---

[4] The General Assembly amended § 20-109 of the Code in 1998 by adding a new subsection, but the subsection with which we are concerned today, (A), remained largely unchanged. Subsection A contained the phrase "may thereafter accrue" in 1993, as it does today.

C.  UNILATERAL CESSATION OF SPOUSAL SUPPORT PAYMENTS

Wife next claims that the circuit court "erred in holding that the [PSA] allowed [husband] to cease paying spousal support prior to the date the trial court made a determination regarding cohabitation."  We agree.  The relevant facts in this case were similar in many respects to the facts in Stroud, therefore we turn to that case to explain our holding as to the second assignment of error.  The termination provision in the PSA read as follows:

> Spousal support shall terminate upon the first of the following conditions:
>
> A.  The death of either party;
>
> B.  The remarriage of Wife.  Pursuant to Virginia Code Section 20-109 D, the spouse entitled to support shall have an affirmative duty to notify the payor spouse immediately upon her remarriage at the last known address of the payor spouse; or
>
> C.  Upon clear and convincing evidence that the spouse receiving support has been habitually cohabiting with another person in a relationship analogous to a marriage for one year or more, spousal support shall terminate.[5]

The termination provision in the agreement in Stroud stated:

> payment shall end upon the death of either party, the remarriage of [wife] and/or her cohabitation with any person to whom she is not related by blood or marriage in a situation analogous to marriage for a period of thirty (30) or more continuous days, or with the payment due on February 25, 2009, whichever event first occurs.

Stroud, 54 Va. App. at 233, 677 S.E.2d at 630.  In both agreements, support terminated upon the death of either party, upon the remarriage of the spouse receiving support, after a period of

---

[5] In an earlier provision the PSA stated:  "Spousal support shall terminate with the payment due on December 10, 2018, if not sooner as provided in this agreement."

cohabitation analogous to marriage of the spouse receiving support, or upon the final scheduled spousal support payment. Both agreements used the verb "shall."[6]

In Stroud, we held that "the provision of the PSA regarding termination of spousal support was not a self-executing provision and that husband was not entitled to unilaterally terminate support payments without seeking entry of a proper court order." Id. at 239, 677 S.E.2d at 632. We underscored the importance of the legal terms of art contained in the agreement, concluding that "[r]esolution of this issue is governed by the interpretation of the words 'cohabitation' and 'situation analogous to marriage,' terms undefined in the property settlement agreement, yet the subject of litigation in our appellate courts." Id. at 238, 677 S.E.2d at 632.

In husband and wife's PSA, the term "cohabitation" also required judicial interpretation, as did the phrase "relationship analogous to a marriage." The termination provision in this case required judicial interpretation even more plainly than did the provision in Stroud, since the termination provision in the case at bar included the phrase "[u]pon clear and convincing evidence." We can conceive of no greater indication that a paragraph requires judicial resolution than the presence within that paragraph of a recognized standard of legal proof.

Husband asserts that wife's admitted cohabitation constituted an "empirical determination" justifying unilateral cessation of spousal support. However, Stroud makes clear that determination of an issue such as whether "clear and convincing evidence that the spouse receiving support has been habitually cohabiting" is not the sort of empirical determination which would render a provision self-executing.[7] Id. at 238-39, 677 S.E.2d at 632 ("[A] provision

---

[6] We find no meaningful distinction between "shall end" and "shall terminate."

[7] Husband's reasoning is especially unpersuasive given that he did not have wife's sworn admission at the time he elected to cease paying support.

can be self-executing only when the triggering event is empirically determined, such as a date certain, reaching a specific age, or death. On the other hand, provisions that require subjective determinations, such as elements of proof, interpretation, or witness credibility, cannot be self-executing . . . ." (footnote omitted)); see also Skeens, 18 Va. App. at 158, 442 S.E.2d at 435 ("When changed circumstances dictate a modification of a support decree, the appropriate remedy is for the party to petition the court to modify the decree. The party or parties may not unilaterally or bilaterally vary its terms.").

Husband cites the phrases "as the circumstances may make proper" and "shall terminate spousal support" from § 20-109(A) of the Code as "plain language" supporting his position. Section 20-109(A), however, specifies what a *court* may do and must do, not what a party is empowered to do without court authority. Conveniently, Code § 20-109(A) and the PSA contain an identical phrase: "upon clear and convincing evidence that the spouse receiving support has been habitually cohabiting with another person in a relationship analogous to a marriage for one year or more." The "clear and convincing" burden is not met by convincing oneself, but by convincing a court.

For these reasons, we hold that the circuit court erred in ratifying husband's unilateral cessation of spousal support beginning in July of 2014, prior to the filing of his motion to reinstate. This holding necessarily means that the circuit court erred in finding that no spousal support arrearage existed.[8]

### D. ATTORNEYS' FEES AND COSTS ON APPEAL

Both husband and wife seek an award of attorneys' fees and costs incurred in this appeal. This Court "has the opportunity to view the record in its entirety and determine whether the

---

[8] We agree that husband should have paid spousal support during the pendency of the modification proceedings, *i.e.* through October of 2014. However, because we hold that the proper termination date is July 29, 2014, the only lost support was for July of 2014.

appeal is frivolous or whether other reasons exist for requiring additional payment." O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

As to wife's request for attorneys' fees and costs, we find that husband's positions in the circuit court, which were adopted in part by the circuit court, were "erroneous but nonetheless fairly debatable." Brandau v. Brandau, 52 Va. App. 632, 643, 666 S.E.2d 532, 538 (2008). Though the circuit court's decision was in error, the circuit court was well aware of much of the precedent upon which we base our reversal today,[9] and we do not find that husband's advocacy in support of the circuit court's decision (necessitating wife's appeal) to be so egregious as to warrant an award of wife's attorneys' fees and costs on appeal.

As to husband's request for attorneys' fees and costs, he concedes wife's first assignment of error (that the circuit court erred in terminating spousal support retroactively to March 29, 2013). At the hearing before the circuit court in October of 2014, however, husband asked for the very ruling he now concedes was erroneous. Husband cannot now complain of the expense he incurred as a result of wife's appeal of such ruling. Nor is husband entitled to reimbursement of costs and fees required to oppose, on appeal, wife's second assignment of error, since she has prevailed there as well.[10] See id. at 642, 666 S.E.2d at 538 ("We summarily reject husband's request, given that he did not prevail on either of his two assertions on appeal and necessarily

---

[9] See App. at 62-63, 72-74, 78-79, 82.

[10] Husband encourages an award of attorneys' fees and costs "especially since he was not awarded his fees and costs of $22,039.09 when he prevailed in the trial court . . . ." Appellee's Br. at 6. Our determination that husband is not entitled to attorney's fees or costs expended in this appeal is a separate question from whether he should have been awarded the attorneys' fees and costs he incurred in investigating wife's cohabitation and bringing his motion in the circuit court. Any objection husband may have had to the circuit court's adverse ruling on his request for attorneys' fees and costs was not preserved by contemporaneous objection, as required by Rule 5A:18, nor did husband note any additional assignment of error in his brief, as permitted by Rule 5A:21(b). As such, we are both unable to address the circuit court's denial of husband's request for attorneys' fees and costs in the circuit court, and unwilling to factor such denial into our determination as to whether he is entitled to attorneys' fees and costs expended on appeal.

cannot be a candidate for an award of appellate fees."). As such, we deny husband's request for attorneys' fees and costs on appeal.

### III. CONCLUSION

For the reasons stated above, we reverse the order of the circuit court terminating spousal support retroactively to March 29, 2013. We find the termination date to be July 29, 2014. We remand this case to the circuit court for entry of an order terminating spousal support as of July 29, 2014. We also reverse the circuit court's finding that husband was entitled to cease payment of spousal support unilaterally, prior to seeking court intervention, and thus we reverse that portion of the circuit court's final order stating that no support arrearage existed. We find an arrearage exists for the month of July 2014. We remand this case to the circuit court for entry of an order requiring husband to pay wife the support owed for July of 2014 and any other monthly or quarterly payment due before July 29, 2014 that remains unpaid. Lastly, we decline to award attorneys' fees or costs on appeal to either party.

Reversed and remanded.