COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Elder and Humphreys
Argued at Richmond, Virginia


ROBERT M. VOLTZ

                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 1665-11-4                         JUDGE LARRY G. ELDER
                                                         MARCH 27, 2012
ANNE C. VOLTZ


                FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                             James H. Chamblin, Judge

          Jon D. Huddleston (Jeanine M. Irving; Sevila, Saunders,
          Huddleston & White, P.C., on brief), for appellant.

          Carolyn M. Grimes (Lieblich & Grimes, P.C., on brief), for appellee.


        Robert M. Voltz (father) appeals the order of the trial court regarding child support paid

to Anne C. Voltz (mother).  He contends that the trial court did not follow the terms of the

parties' written agreement when it refused to modify the amount of child support retroactive to

the date their daughter's physical residence changed.  Because the trial court correctly interpreted

the terms of the agreement, we affirm.

                                          I.

        This case stems from a dispute over the amount of child support owed between the

parties for the year 2008.  The divorcing parties signed a "Parenting Agreement," agreeing,

among other things, that the parties would equally share custody of the two children.  The parties

agreed for an arbiter to resolve the outstanding issues.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The resulting arbitration decision set the amount of child support and provided for future modifications to child support in the event of "a material change in the Parenting Agreement." If a party petitioned the court system to determine the amount of support, the parties were to "state in writing the amount of support he/she deem[ed] to be appropriate." The party with the number most different than that set by the court was to pay attorneys' fees.

In 2008, the parties' daughter, K.V., moved in with father full-time and no longer shared a residence with mother. The next day, father moved in the trial court to modify K.V.'s custody. The trial court entered an order awarding K.V.'s physical and legal custody to father. Father moved to modify child support based on K.V.'s change in residence. The parties disagreed as to what date the trial court should modify child support.

The trial court ruled that K.V.'s residence did not change for child support purposes until the court awarded her legal custody to father. The court recalculated the amount of child support for 2008 based upon shared custody of both the children for the entire year. Finding that father's written statement differed the most from the amount set by the court, the trial court ordered for father to bear the cost of the procedure, including attorneys' fees, pursuant to the agreement. As mother had proceeded *pro se*, father did not have any costs to pay.

Father appeals the trial court order modifying child support and denying his request for an award of attorney's fees and costs. Both parties ask this Court for an award for attorney's fees and costs associated with this appeal.

## II.

### A.  CHILD SUPPORT

Father contends that the trial court did not modify child support in accordance with the parenting agreement. He reasons that a "material change" under subparagraph A of the arbitrated agreement occurred when K.V. moved in with him full-time. Mother responds that

evidence in the record supports the trial court's factual finding as to when the child's custody changed.

Virginia public policy encourages divorcing parents to agree to terms governing "the care and support of their minor children." Shoup v. Shoup, 37 Va. App. 240, 248, 556 S.E.2d 783, 787 (2001). Agreements between parties "concerning the custody and maintenance of their minor children" may be affirmed, ratified, and incorporated in a court decree. Code § 20-109.1. As always, "[t]he best interest of the child or children is the paramount and guiding principle in setting child support." Shoup, 37 Va. App. at 248, 556 S.E.2d at 787.

Generally, child support payments vest as they become due, and thus a court may only modify child support for a period when a motion to modify child support is pending.[1] See, e.g., Jones v. Davis, 43 Va. App. 9, 13, 595 S.E.2d 501, 503 (2004). However, a court may impose a "provision reflecting the parties' agreement to address and make future modifications of support as circumstances change." Shoup, 37 Va. App. at 252, 556 S.E.2d at 789. "Provisions in such agreements for the modification of child support shall be valid and enforceable. Unless otherwise provided for in such agreement or decree incorporating such agreement, such future modifications shall not require a subsequent court decree." Code § 20-109.1.

The question in this case is whether the parties, through the arbitrated agreement, agreed to immediately modify child support if one of the children established a sole residence with one of the parties. Absent such a provision, the trial court could not modify child support any earlier than March 12, 2009, when father filed the motion to modify child support. Although this Court accords the trial court's factual findings great deference, we review *de novo* the interpretation of

---

[1] There are two exceptions to this general rule that are not at issue here. See, e.g., Jones v. Davis, 43 Va. App. 9, 14, 595 S.E.2d 501, 503 (2004); Gallagher v. Gallagher, 35 Va. App. 470, 477, 546 S.E.2d 222, 225 (2001); Acree v. Acree, 2 Va. App. 151, 157, 342 S.E.2d 68, 71 (1986).

the parenting agreement, as it is an issue of law. See Stroud v. Stroud, 54 Va. App. 231, 236, 677 S.E.2d 629, 631 (2009).

"Where the agreement is plain and unambiguous in its terms, the rights of the parties are to be determined from the terms of the agreement." Gayler v. Gayler, 20 Va. App. 83, 83, 455 S.E.2d 278, 279 (1995). "[T]he intent of the parties as expressed in the contract controls." Id. We construe all of the contract's provisions together, in order to honor the parties' intent. Jennings v. Jennings, 12 Va. App. 1187, 1194, 409 S.E.2d 8, 13 (1991).

> In determining the intent of the parties, courts will generally not infer covenants and promises which are not contained in the written provisions. However, "what is necessarily implied is as much a part of the instrument as if plainly expressed, and will be enforced as such. If the language of the instrument leaves the meaning of the parties in doubt, the court will take into consideration the occasion which gave rise to it, the obvious design of the parties, and the object to be attained, as well as the language of the instrument itself, and give effect to that construction which will effectuate the real intent and meaning of the parties."

Pellegrin v. Pellegrin, 31 Va. App. 752, 759, 525 S.E.2d 611, 614 (2000) (quoting Va. Ry. & Power Co. v. City of Richmond, 129 Va. 592, 611, 106 S.E. 529, 536 (1921)).

Father argues that K.V.'s move constituted a "material change" under subparagraph A, meriting a modification retroactive to the date of her change in residence. Father relies on the language: "If there is a material change in the Parenting Agreement signed by the parties January 30, 2002, the number of days shall be recalculated [for guideline child support calculations]." A critical qualifier in this paragraph is that there must be a material change *in the parenting agreement*. The parties did not modify the agreement until April 17, 2009, when the trial court entered the consent order changing K.V.'s custody.

Subparagraph A listed two circumstances involving changed residences of the children and provided for an immediate child support recalculation in either event. The parties disagree as to whether the arbitrated agreement intended these scenarios as an exhaustive list of "material

changes" or merely examples. We do not reach this question because we find that regardless, the change at issue is not a "material change to the parenting agreement."

Father alternatively contends that the language "[c]hild support payments shall continue to the . . . cessation of his or her residence with either parent" from subparagraph F governs the present circumstance: because K.V. ceased living with mother, he was no longer obligated to pay mother child support for K.V. Father's argument fails because the paragraph delineated circumstances under which the child support obligation would *end*, not circumstances meriting a *modification* of child support.[2] The parties did not intend to end the child support obligation entirely for a child if he or she moved in with one of the parties full-time: this interpretation of the agreement would contradict subparagraph A (providing for a modification if both children reside primarily with one party) as well as contravene the principle that child support awards first and foremost consider the best interest of the child.

In sum, the arbitrated agreement provided for some specific situations requiring modification of child support retroactive to the date of the changed situation. Because none of those situations are at issue here, the trial court correctly interpreted the agreement and did not err by refusing to modify child support for a period prior to father filing his motion to modify.

## B. ATTORNEY'S FEES

Father's argument that the trial court erred by denying him an award of attorney's fees and costs incurred in that court is conditioned on his assertion that the court erred in determining the amount of child support. In light of our holding that the trial court did not err in determining child support, the trial court likewise did not err in denying father's request for attorney's fees and costs. See Rutledge v. Rutledge, 45 Va. App. 56, 62, 608 S.E.2d 504, 507 (2005)

---

[2] "Virginia law is clear that both parties owe their child a duty of support during a child's minority or until the statutory extension beyond minority where a child is a full-time high school student . . . ." 9 Peter Nash Swisher, Lawrence D. Diehl, & James R. Cottrell, Family Law: Theory, Practice, and Forms § 10:3 (2011) (footnote omitted); see also Code § 16.1-278.15.

(explaining that when the parties have entered into a valid and enforceable property settlement agreement, "the statutory language of Code § 20-109(C) restricts the judge to decreeing according 'to the terms' of the agreement").

Both parties seek attorney's fees and costs incurred in this appeal. "The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment." O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Although ultimately erroneous, father's argument on appeal is "fairly debatable." See Brandau v. Brandau, 52 Va. App. 632, 642, 666 S.E.2d 532, 538 (2008). We therefore deny both parties' requests for fees and costs.

III.

Because the trial court did not violate the terms of the parenting agreement in determining child support and denying father's request for attorney's fees, we affirm. We decline to award appellate attorney's fees to either party.

Affirmed.